NOT FOR PUBLICATION                                                        CLOSED

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                           :
ZACHARIAH CLIFTON, JR.,                    :
                                           :
       Plaintiff,                          :   Civil Action No. 03-3725 (JAP)
                                           :
   v.                                      :
                                           :
                                           :   **OPINION**
NEW JERSEY TRANSIT                         :
CORPORATION and NEW JERSEY                 :
TRANSIT RAIL CORPORATION, INC.,            :
                                           :
       Defendants.                         :
_____:

APPEARANCES


Zachariah Clifton, Jr.
304 Midland Avenue
East Orange, NJ 07017
    *Pro Se*

State of New Jersey Office of the Attorney General
Department of Law and Public Safety
Division of Law
Peter C. Harvey
Edward M. Yures
R.J. Hughes Justice Complex
P.O. Box 112
Trenton, NJ 08625-0112
    *Attorneys for Defendants New Jersey Transit Corporation and New Jersey Transit Rail Corporation, Inc.*

PISANO, District Judge.

## I. INTRODUCTION

Plaintiff Zachariah Clifton, Jr. initiated this action on August 6, 2003 challenging a decision of Special Board of Adjustment No. 956 (the "Adjustment Board"), an arbitration panel for disputes involving Defendants New Jersey Transit Corporation and New Jersey Transit Rail Operations, Inc. (collectively, "NJT"), which affirmed NJT's decision to terminate Plaintiff's employment with NJT. Plaintiff alleges that his termination violated the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, and the Railway Labor Act, 45 U.S.C. § 151, *et seq*. (Am. Compl. Counts One, Five). Plaintiff also alleges violations of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.*, including handicap discrimination, failure to accommodate a handicap, racial discrimination, and racial harassment. (Am. Compl. Counts Two, Three, and Four). Plaintiff seeks to vacate the Adjustment Board's decision, reinstatement of his employment retroactive to the date of his termination, as well as back pay, front pay, lost benefits, compensatory damages, special damages, punitive damages, attorneys fees, interest and costs of suit.

This Court's jurisdiction is based on 28 U.S.C. § 1331 as the Amended Complaint alleges federal statutory claims. Defendants now move for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure ("FRCP"). Plaintiff appears *pro se* and the Court therefore construes Plaintiff's Amended Complaint and Opposition to Defendants' Motion for Summary Judgement liberally. *See Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003). However, for the reasons expressed below, the Court will grant Defendants' motion for summary judgement on Plaintiff's federal claims. As discussed below, this Court declines to exercise supplemental

jurisdiction over Plaintiff's remaining state law claims.

## II. FACTUAL HISTORY[1]

Plaintiff was employed by NJT as a Bridge and Building mechanic from November 16, 1987 to October 29, 2001. (Am. Compl. at ¶ 3; Deft.'s Statement of Material Facts at ¶¶ 3, 13). While employed by NJT, Plaintiff at all relevant times was a union member whose employment was governed by a collective bargaining agreement (the "CBA") between the Brotherhood of Maintenance of Way Employees and New Jersey Transit Rail Operations, Inc. (Am. Compl. at ¶¶ 11, 13; Deft.'s St. of Material Facts at ¶¶ 4). Plaintiff worked at Defendants' Wood Ridge facility in Jersey City, New Jersey, from 1999 to 2000, and again in October 2001. (Am. Compl. at ¶¶ 11, 13; Deft.'s St. of Material Facts at ¶¶ 4). From 2000 to October 2001, Plaintiff worked at Defendants' Penn Station facility in Newark, New Jersey. (Yures Aff. Ex. G at 37-39, 88-89). On October 29, 2001, Plaintiff was terminated from his employment. (Am. Compl. at ¶ 3; Deft.'s St. of Material Facts at ¶¶ 3, 13).

During the period October 15, 2001 to October 26, 2001, Plaintiff did not report to work as scheduled. (Am. Compl. ¶ 7; Deft.'s St. of Material Facts at ¶ 12, citing Yures Aff. Ex. E. at 001). Plaintiff alleges that he had a serious health condition from October 15, 2001 to October 29, 2001. (Am. Compl. ¶ 27; Deft.'s St. of Material Facts at ¶ 30). Plaintiff also alleges that shortly after October 29, 2001, he provided to Defendants medical documents dated October 29, 2001 and November 5, 2001 that demonstrated that Plaintiff had been medically disabled and had received professional care. (Am. Compl. ¶¶ 8-9; Deft.'s St. of Material Facts at ¶ 39, citing

---

[1] The parties have made allegations concerning facts specific to Plaintiff's state law claims; however, because the Court declines to exercise jurisdiction over Plaintiff's state law claims those factual allegations are not addressed in detail herein.

2

Yures Aff. Ex. J at 50:9-19; Pltf.'s Br. at 1-2).

Rule 27 of the CBA governing Plaintiff's employment with NJT addresses employee absence without permission. Under Rule 27, "[a]n employee unable to report for work for any reason must notify his supervisor as soon as possible. (Am. Compl. ¶ 11; Deft.'s St. of Material Facts at ¶ 14, citing Yures Aff. Ex. E. at 002, 0048). In addition, Rule 27 provides that "[e]xcept for sickness or disability, or under circumstances beyond his control, an employee who is absent in excess of ten (10) consecutive days without receiving permission from his supervisor will forfeit all seniority under this Agreement." (Am. Compl. ¶ 11; Deft.'s St. of Material Facts at ¶ 14, citing Yures Aff. Ex. E. at 002, 0048).

On October 29, 2001, NJT's Chief Engineer of Structure, Glenn Sullivan, notified Plaintiff by letter that he had been absent from work without permission in excess of ten consecutive days and, in accordance with CBA Rule 27, Plaintiff's seniority was forfeited and his employment relationship administratively terminated. (Am. Compl.¶ 8; Deft.'s St. of Material Facts at ¶ 13, citing Yures Aff. Ex. E at 0018, 0075 and Ex. A. at ¶ 8). By letter dated October 31, 2001, Plaintiff was provided with a copy of his record of employment absences, which reflected those days referenced in Sullivan's October 29, 2001 letter. (Deft.'s St. of Material Facts at ¶ 15, citing Yures Ex. E at 0020-0024).

On November 1, 2001, the Chairman of the Brotherhood of Maintenance of Way Employees appealed Plaintiff's termination under CBA Rule 27 to the Manager of Labor Relations. (Deft.'s St. of Material Facts at ¶ 16, citing Yures Aff. Ex. E at 0028, 0083). The Manager of Labor Relations affirmed the finding that Plaintiff violated CBA Rule 27 and had, therefore, terminated his employment relationship. (Deft.'s St. of Material Facts at ¶ 17, citing

3

Yures Aff. Ex. E at 0031, 0084).

On November 16, 2001, the Chairman of the Brotherhood of Maintenance of Way Employees further appealed Plaintiff's termination to NJT's Director of Labor Relations. (Deft.'s St. of Material Facts at ¶ 18, citing Yures Aff. Ex. E at 0033, 0085).  This appeal was likewise denied.  (Deft.'s St. of Material Facts at ¶ 19, citing Yures Aff. Ex. E at 0035, 0086).

In February 2002, the Chairman of the Brotherhood of Maintenance of Way Employees requested that Plaintiff's case be scheduled for arbitration, and an arbitration was subsequently scheduled.  (Deft.'s St. of Material Facts at ¶¶ 20-21, citing Yures Aff. Ex. E at 0037-38, 0088). An arbitration hearing was held before the Special Board of Adjustment No. 956 (the "Adjustment Board"), which issued a decision denying Plaintiff's claim on November 25, 2002. (Deft.'s St. of Material Facts at ¶¶ 22).

The specific claims advanced by Plaintiff's union on his behalf for the consideration of the Adjustment Board were:  (1) "The Carrier's decision to terminate the seniority of B[ridge]&B[uilding] Mechanic Zackariah (*sic*.) Clifton, Jr., for his alleged failure to cover his assignment from October 14, 2001 through October 26, 2001, was without just and sufficient cause and in violation of the [Collective Bargaining] Agreement" and (2) "B[ridge]&B[uilding] Mechanic Zackariah (*sic*.) Clifton, Jr., shall now be reinstated to service with seniority and all other rights unimpaired and compensated for all wage loss suffered."  (Yures Aff. Ex. E. at 001). The Adjustment Board rejected these claims, ultimately determining that the Plaintiff was in violation of CBA Rule 27 and consequently that his appeal must be denied.  (Deft.'s St. of Material Facts ¶ 22).  In so deciding, the Adjustment Board concluded:

> After careful consideration of the record that was developed on the property,

4

> we find no basis upon which to sustain this claim. The subject of Rule 27 is not one of first impression. There have been numerous cases on this topic and all have recognized that there are two distinct elements to this rule. The first requires the absent employee to notify supervision of his situation. On this point, the record clearly establishes that [plaintiff] was absent for more than ten consecutive days without notifying supervision of his status.
>
> It is the second prong of Rule 27 which forms the crux of the instant case. [Plaintiff's union] contends that [plaintiff] clearly had a legitimate medical excuse which prevented him from working on the days in question and adversely affected his ability to provide proper notice of the reasons for his absence. Therefore, [plaintiff's union] argues [plaintiff] did not violate Rule 27 and his administrative termination was unjustified.
>
> [NJT's] position is that the [plaintiff] plainly did not comply with the provisions of Rule 27 and accordingly his separation was required under the self-executing terms of he agreement. It contends that [plaintiff's] asserted medical excuses were not offered until after his employment was severed and in any event do not provide a sufficient excuse for his failure to notify supervision of his whereabouts.
>
> Based on our review, the [Adjustment Board] finds that the medical documentation furnished by the [plaintiff] after his separation does not establish that he was unable to contact [NJT] during the period of his absence. Absent evidence that [plaintiff] suffered from a condition that prevented him from giving such notice, the [Adjustment Board] concludes that [NJT] was correct in it (sic) judgment that Rule 27 had been violated.
>
> It is indeed unfortunate when an employee with a long and excellent work record has his employment severed. However, the notification procedures embodied in Rule 27 serve to ensure that absent employees inform [NJT] that they intend to continue the work relationship. Without such notification, or a proper basis for the lack of notice in this case [NJT] was entitled to treat the [plaintiff] as having quit his position when no excuse, other than after the fact medical assertions not tied to the period of absence, were offered to explain his failure to notify [NJT].

(Deft.'s St. of Material Facts at ¶ 22, citing Yures Aff. Ex. E at 002-003 (alterations in Deft.'s St. of Material Facts)).

Following the Adjustment Board's decision, Plaintiff initiated this action. In his pleadings, Plaintiff asserts two claims under federal statutes, the Family and Medical Leave Act,

5

29 U.S.C. § 2601, *et seq.*, and the Railway Labor Act, 45 U.S.C. § 151, *et seq.*, and three claims under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.*[2]

### III. SUMMARY JUDGMENT STANDARD

A court shall grant summary judgment under FRCP 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The substantive law identifies which facts are critical or "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party. *Healy v. N.Y. Life Ins. Co.*, 860 F.2d 1209, 1219 n.3 (3d Cir. 1988).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party makes this showing, the burden shifts to the non-moving party to present evidence that a genuine fact issue compels a trial. *Id.* at 324. In so presenting, the non-moving party may not simply rest on its pleadings, but must offer admissible evidence that establishes a genuine issue of material fact, *id.*, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, a genuine issue for trial does not exist unless the non-moving party proffers evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249.

The Court must consider all facts and their logical inferences in the light most favorable

---

[2] Plaintiff's state law counts consist of claims of (1) racial discrimination, racial harassment, and retaliation, (2) failure to accommodate handicap, and (3) handicap discrimination.

to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson*, 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW v. BMW of N. Am.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## IV. DISCUSSION

### A. Family and Medical Leave Act

#### 1. Legal Framework

The Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, requires covered employers to provide eligible employees with up to twelve weeks of leave within a twelve-month period for certain listed reasons, including for "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1). An employer is prohibited from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under" the FMLA or from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful by" the FMLA. 29 U.S.C. § 2615(a)(1)-(2). In addition, United States Department of Labor regulations impose upon employers obligations to inform employees of FMLA rights. *See Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 142 (3d Cir. 2004) (citing 29 C.F.R. §§ 825.208, 825.301).

To present a claim under the FMLA, a plaintiff must establish a *prima facie* case by showing: "(1) []he is an eligible employee under the FMLA, (2) defendant is an employer

subject to the requirements of the FMLA, (3) []he was entitled to leave under the FMLA, (4) []he gave notice to the defendant of [his] intention to take FMLA leave, and (5) the defendant denied [him] the benefits to which [he] was entitled under the FMLA." *Parker v. Hahnemann Univ. Hosp.*, 234 F. Supp. 2d 478, 484 (D.N.J. 2002). A plaintiff can seek recovery for an alleged violation of the FMLA under two different theories: (1) entitlement and/or (2) retaliation. *Id.* at 485. Under the entitlement theory, a plaintiff must show that he was entitled to benefits under the FMLA, including those enumerated in section 2615(a)(1), and that an employer has denied the plaintiff such entitlements. *Id.* at 485. The retaliation theory "protects employees from suffering discrimination because they have exercised their rights under the FMLA." *Id.* at 487.

### 2. Discussion

In the first count of his Amended Complaint, Plaintiff claims that the Defendants' failure to grant a retroactive leave of absence to the Plaintiff and Defendants' discharge of Plaintiff from his employment violated the FMLA. (Am. Compl. ¶ 30). Plaintiff alleges that the Defendants "had not, as of October 29, 2001, given [P]laintiff actual notice of the Family Medical and (*sic*.) Leave Act notice requirements." (Am. Compl. ¶ 28). In addition, Plaintiff alleges that he had a serious health condition from October 15, 2001 to October 29, 2001 that "rendered him incapable of giving notice to [D]efendants concerning his need for leave." (Am. Compl. ¶ 27). Plaintiff also alleges that "[a]s of October 29, 2001," and also after that date, Defendants were aware that Plaintiff "had a serious health condition and that he needed to take leave for same." (Am. Compl. ¶ 29). Plaintiff argues that as a result of "Defendants' failure to grant a leave of absence to plaintiff and defendants' resulting discharge of plaintiff," Defendants violated the FMLA. (Am. Compl. ¶ 30). In Defendants' motion for summary judgment, Defendants argue that there

is no FMLA discrimination because Plaintiff never submitted a request for FMLA leave; that because Plaintiff testified he had previously requested a leave, he was familiar with the process for requesting leave; and that NJT had a legitimate non-discriminatory business reason for terminating his employment. (Deft's Br. at 22-25). Plaintiff did not address his claim under the FMLA in his opposition papers.

Plaintiff's allegations do not support a cognizable FMLA claim because Plaintiff has not adduced evidence sufficient to support a *prima facie* case under either the retaliation or the entitlement theories. *See Parker*, 234 F. Supp. 2d at 484. Specifically, there is no question that Plaintiff did not "g[i]ve notice to the defendant of [his] intention to take FMLA leave." *Id.* FMLA regulations require employees to provide employers with notice of the need for FMLA leave "as soon as practicable."[3] 29 C.F.R. §§ 825.302(a), 825.303(a). All the regulations require is that the employee inform the employer of the need for leave, whether in person or by telephone, or even through a spokesperson such as a spouse. *See* 29 C.F.R. §§ 825.302(c), 825.303(b). The employee need not even mention the FMLA – he or she need only state that leave is needed. *See* 29 C.F.R. §§ 825.302(c), 825.303(b). Absent extraordinary circumstances, in providing notice "as soon as practicable," an employee would ordinarily be expected to furnish the employer with notice within one or two business days of learning of the need for leave. *See*

---

[3] Where the need for leave is not foreseeable, the employee should provide the employer with notice "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). Where the need for leave is foreseeable, FMLA regulations require an employee to provide the employer with 30 days notice or, if 30 days notice is not practicable, "notice must be given as soon as practicable." 29 C.F.R. § 825.302(a). The Court will assume for the purposes of this analysis that either the need for leave was not foreseeable, or, if it was, that providing 30 days advance notice was not practicable, and that as a result Plaintiff only needed to provide notice as soon as practicable.

9

29 C.F.R. §§ 825.302(b), 825.303(a).

Plaintiff has not set forth any facts suggesting that he attempted to furnish his employer with any notice and thus cannot support a prima facie FMLA claim.  In his Amended Complaint, Plaintiff acknowledges that he did not report to work during the period October 15, 2001 to October 29, 2001 and that he was terminated by Defendants on October 29, 2001.  Am. Compl. ¶¶ 7-8.  Plaintiff admits that neither he nor any member of his family informed Defendants of his medical condition and need for leave until, at the very earliest, October 29, 2001.  *Id.* at ¶¶ 16, 29.  Not until "[s]hortly thereafter" did Plaintiff submit to Defendants any medical documents substantiating his receipt of medical care.  *Id.* at ¶ 9.  Plaintiff does not contend that he or any spokesperson furnished his employer with any notice of his need for leave until he was terminated and after having been absent for ten business days.  Plaintiff must have known of the need for leave at least as of the day on which he began taking leave, namely October 15, 2001.  Plaintiff has adduced no facts suggesting that extraordinary circumstances prevented at least a spokesperson from furnishing Plaintiff's employer with some notice of his need for leave within one or two business days of when the need for leave became apparent.  Whatever else "as soon as practicable" may mean, it does not mean ten business days where no extraordinary circumstances prevented notice from being provided.  *See* 29 C.F.R. §§ 825.302(b), 825.303(a).  Because there is no genuine question that Plaintiff failed to provide notice of his need for FMLA leave to his employer, Plaintiff is unable to support a prima facie FMLA claim.

As noted above, Plaintiff alleges in his Amended Complaint that he was not given actual notice of FMLA procedures and that his discharge following his absence from work for health reasons therefore constitutes a violation of the FMLA.  Defendants, however, have adequately

10

demonstrated that no material issue of fact exists as to whether the Plaintiff had actual notice of FMLA procedures. Defendants point to Plaintiff's deposition testimony in which he reveals that he was aware of NJT's procedures for requesting FMLA leave. In his deposition, before his recollection was refreshed, Plaintiff testified: "I think I did ask for a leave of absence. . . . I don't remember the date, but I know I asked for one prior to that. I think I asked for a leave of absence. I don't know exactly when, but I know I asked for one." (Certif. of Counsel, Ex. H, Clifton Dep. 58:14-20). Thereafter Plaintiff identified a leave of absence application form that he used to request a leave of absence for July 3, 2000 to July 31, 2000, which he submitted on June 28, 2000. (Certif. of Counsel, Ex. H, Clifton Dep. 59:22-24, 60:1-11). Once shown the form, Plaintiff confirmed that he had requested leave at that time for a "family issue." (Certif. of Counsel, Ex. H, Clifton Dep. 58:14-20). Defendants attach this same leave of absence application, bearing Plaintiff's signature and dated June 28, 2000. (*See* Certif. of Counsel, Ex. O). During a different deposition session, while Plaintiff claimed not to be familiar with the Family and Medical Leave policy, he identified a family medical leave absence form application and testified that he had completed such an application. (Certif. of Counsel, Ex. J, Clifton Dep. 33: 4-19). He also testified that he had filled out applications for leave and had been informed verbally regarding the result of his request. (Certif. of Counsel, Ex. J, Clifton Dep. 34: 25, 35: 1-11). Moreover, Plaintiff testified that in the past he had called to inform his supervisors when he would be absent. (Certif. of Counsel, Ex. H, Clifton Dep. 57:21-25, 58:1-11, 59:19-21). Thus, Plaintiff's testimony reveals that he was aware that he had to inform NJT of his need to take leave, whether using the NJT family and medical leave application form or, at a minimum, via the telephone. Accordingly, Plaintiff's own testimony belies his bald allegation that he did not

11

have notice of NJT's FMLA procedures. Notably, Plaintiff makes no effort to rebut Defendants' showing and does not appear to press his allegation that he did not have notice of FMLA procedures in his opposition to Defendants' motion for summary judgment.

As discussed above, Plaintiff failed to furnish his employer with any notice of his intent to take FMLA leave until more than ten business days from when the need for leave became apparent. In addition, Defendants have established that no material question of fact exists as to whether Plaintiff was aware of FMLA procedures. Plaintiff cannot, therefore, establish a *prima facie* FMLA case. Accordingly, Count One of the Amended Complaint must be dismissed.

### B. Count Five: Railway Labor Act

#### 1. Legal Framework

The Railway Labor Act (the "RLA"), 45 U.S.C. § 151, *et seq.*, "provides a comprehensive framework for the resolution of labor disputes in the railroad industry." *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 552 (1987). The RLA "establishes elaborate administrative procedures for the resolution" of labor disputes involving the interpretation or application of collective bargaining agreements, termed "minor disputes."[4] *Id.*; *Malloy v. National R.R. Passenger Corp.*, No. 90-CV-1434, 1990 WL 163243, at *3 (D.N.J. Oct. 23,

---

[4] The RLA's administrative procedures apply to both minor and major disputes. Plaintiff's challenge to the application of CBA Rule 27 against him in this matter is what it referred to in the RLA context as a "minor dispute": "one 'growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.'" *Atchison, Topeka*, 480 U.S. at 563 (quoting 45 U.S.C. 153, First (i)). "Major disputes" are "those arising out of the formation or change of collective bargaining agreements covering rates of pay, rules, or working conditions." *Atchison, Topeka*, 480 U.S. at 563 (quotations and citation omitted).

1990). Labor disputes such as Plaintiff's "initially must be dealt with through a railroad's internal dispute resolution processes, and if not settled there, may be submitted to a division of the Adjustment Board, or to a Public Law Board, which is an arbitration board chosen by the parties." *Id.* at 563. The Adjustment Board generally has exclusive jurisdiction over "minor disputes" - those disputes involving the interpretation or application of existing labor agreements.[5] *Miklavic v. USAir, Inc.*, 21 F.3d 551, 553 (3d Cir. 1994). The RLA provides that decisions of the Adjustment Board "shall be final and binding on both parties to the dispute." 45 U.S.C. § 153 First (m).

While federal courts have jurisdiction to review or set aside Adjustment Board decisions, 45 U.S.C. § 153 First (q), "[j]udicial review of these Boards' determinations has been characterized as among the narrowest known to the law." *Id.* Under the RLA, a court "may not retry [a] plaintiff's claims." *Malloy*, No. 90-CV-1434, 1990 WL 163243, at *3. Reviewing and weighing the evidence is within the exclusive jurisdiction of the Board. *Id.* A reviewing court may set aside an order of the Adjustment Board only upon one or more of the following three specific bases: "(1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption." *Union Pacific R. Co. v. Sheehan*, 439 U.S. 89, 93, 99 S.Ct. 399 (1978). In this Circuit, a reviewing court may not

---

[5] Specific exceptions to this general rule exist, none of which are applicable here. Federal jurisdiction exists for such disputes in only four exceptional circumstances: (1) when "the employer repudiates the private grievance machinery"; (2) when "resort to administrative remedies would be futile"; (3) when "the employer is joined in a DFR claim against the union"; or (4) when "the union's DFR breach causes the employee to lose the right to present his or her grievance." *Miklavic v. USAir Inc.*, 21 F.3d 551, 555 (3d Cir. 1994).

entertain a challenge to an Adjustment Board decision based upon due process.[6] *See United Steelworkers of America Local 1913 v. Union R.R. Co.*, 648 F.2d 905, 911 (3rd Cir. 1981); *see also Malloy*, No. 90-CV-1434, 1990 WL 163243, at *3.

### 2. Discussion

In his claim for relief under the RLA, Plaintiff alleges that the Adjustment Board's decision "did not conform, or confine itself, to matters within the Special Board of Adjustment's jurisdiction and/or was fraudulent or corrupt" and that "[t]he decision of the Board was also wholly baseless and completely without foundation, and, in addition, violated due process." (Am. Compl. ¶ 44). This cause of action must be dismissed in its entirety. First, as noted above, in this Circuit, a reviewing Court cannot hear a challenge to an Adjustment Board decision based upon due process.[7] *See United Steelworkers*, 648 F.2d at 911. As to Plaintiff's allegations that the Adjustment Board "did not conform, or confine itself, to matters within" its jurisdiction, that it was fraudulent or corrupt," and that its decision "was also wholly baseless and completely

---

[6] Whether federal courts are precluded under the RLA from hearing due process challenges to Adjustment Board decisions is the subject of a Circuit split. *See Kinross v. Utah Railway Co.*, 362 F.3d 658 (10th Cir. 2004) (discussing split among the Circuit Courts of Appeal regarding whether a federal court may review due process claims arising from Adjustment Board decisions).

[7] Even if the Court could consider Plaintiff's due process challenge to the Adjustment Board's decision, Plaintiff's claim must be dismissed. Plaintiff has proffered no evidence in support of his claim, indeed, nothing more than bald allegations of due process violations in his Amended Complaint and Brief. Moreover, as noted by Defendants, when examined on his due process allegation during his deposition, Plaintiff testified: "The decision of the Board was . . . Okay. I don't know how to -- all this stuff is Greek to me, so to speak. But I, you know - - I can't explain it." (Yures Aff., Ex. H at 146:14-18). Accordingly, even if this Court were empowered to review the Adjustment Board's decision on due process grounds, Count One of the Amended Complaint still must be dismissed.

without foundation," Plaintiff has advanced no supporting evidence and instead makes only legal and bald factual arguments outside of the scope of this Court's review.

In his opposition papers, Plaintiff argues (1) his case was not handled properly because he was not examined by a board of doctors pursuant to CBA Rule 28[8]; (2) Plaintiff was not given copies of the transcripts of the hearing in violation of CBA Rule 26(f); (3) the Adjustment Board refused to permit Plaintiff's witnesses to appear in violation of CBA Rule 26(e); (4) the Adjustment Board did not accept Plaintiff's medical reports and other information submitted by Plaintiff into evidence; (5) the Adjustment Board did not confine itself to proper actions before and or during the arbitration hearing; (6) the Adjustment Board hearing was corrupt; and (7) Plaintiff did not violate CBA Rule 27 because his "disability, sickness, and circumstances beyond [his] control are all material facts . . . [which] should have been entertained and accepted" and he provided medical documentation to NJT, and because he was absent from work for exactly ten of his scheduled business days, not for a period in excess of ten days.

Plaintiff's claims cannot be sustained. First, Plaintiff cannot advance his claim based

---

[8] According to Plaintiff, CBA Rule 28 provides in part:

> Determination of Physical Fitness. When an employee has been removed or withheld from his position due to his physical condition and when the employee or his union representative desires the question of his physical fitness to be finally decided before he is permanently removed or withheld from his position, the case shall be handled in the following manner: The General Chairman shall bring the case to the attention of the Agency's Director Labor Relations. The Agency and the General Chairman shall each select a doctor to represent them, each notifying the other of the name and address of the doctor selected. These two doctors will confer and appoint a third doctor. Such board of doctors shall then fix a time and place for the employee to meet them.

(Pltf.'s Br. at 1).

upon CBA Rules 26 and 28 or upon a challenge to the process afforded him.  No claim under CBA Rule 26 or CBA Rule 28 was considered by the Adjustment Board, and, therefore, Plaintiff is asking this Court to consider these claim in the first instance.  This the Court cannot do because such review would be require the interpretation and/or application of the CBA, which is within the exclusive jurisdiction of the Adjustment Board.  No argument is made with respect to any of the narrow exceptions to the Adjustment Board's exclusive jurisdiction, *see* note 5, *supra*, nor is there any indication that any would apply.  Moreover, even if these allegations are more properly characterized as due process challenges, they, like the allegations relating to the submission of medical reports and other information, are likewise not properly before this court because due process challenges are not among the three permitted bases of review of an Adjustment Board decision.  Second, Plaintiff sets forth no triable issue of material fact pertaining to his allegations that the Adjustment Board did not confine itself to proper actions before and or during the arbitration hearing or that the hearing was corrupt.  Finally, Plaintiff's challenges to the Adjustment Board decision based upon CBA Rule 27 constitute an attempt to relitigate the merits of his case.  As noted above, the Adjustment Board is vested with the power to weigh the evidence and interpret and apply collective bargaining agreements.  Plaintiff's allegations under CBA Rule 27 plainly do not fit within any of the three permitted bases of review and are thus not properly before this Court.

While Plaintiff has pointed to no evidence in the record supporting his allegations, Defendants in their moving papers compiled Plaintiff's testimony pertaining to his allegations against the decision of the Adjustment Board.  Defendants show that, when confronted during his deposition with each of his allegations, Plaintiff essentially testified either that he could not

explain them or repeated bald allegations, such as "[i]t was very biased in every coordination of this hearing."  (Yures Aff. Ex. H at 139:22, 143:17-21, 144:6-9, 144:12-15, 145:14, 14:18-22, 146:14-18).

Plaintiff has failed to advance any triable issue of fact in support of his claim for vacatur of the Adjustment Board decision.  Plaintiff is essentially asking this Court to retry his claims or for *de novo* review of the Adjustment Board's decision.  As discussed above, the Court cannot retry Plaintiff's case, nor does it have plenary review over the Adjustment Board's decision. *Sheehan*, 439 U.S. at 93; *Malloy,* No. 90-CV-1434, 1990 WL 163243, at *3.  Accordingly, Plaintiff's fifth cause of action must be dismissed.

### C.  Counts Two, Three, and Four:  New Jersey State Law Claims

In his Amended Complaint, Plaintiff advances claims under the New Jersey Law Against Discrimination ("NJ LAD"), N.J.S.A. 10:5-1, *et seq*.  Because the Court has already dismissed all claims supporting the Court's original, federal question jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims brought pursuant to NJ LAD.

Section 1367 enables a federal court to consider claims premised upon state law over which no independent basis of federal jurisdiction exists.  District courts have supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy...."  28 U.S.C. § 1367(a). Section 1367(c) permits a district court to decline to exercise supplemental jurisdiction over a claim when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  As discussed above, all of Plaintiff's federal claims have been

dismissed. This Court's original jurisdiction was based on federal question pursuant to 28 U.S.C. § 1331. No other basis for jurisdiction appears to exist and no independent basis for the remaining state law claims has been alleged.[9] Plaintiff's remaining claims are, therefore, dismissed. See 28 U.S.C. 1367(c)(3); *Kohn v. AT&T Corp.*, 58 F. Supp. 2d 393, 421-22; *Eckhaus v. Consolidated Rail Corp.*, No. 00-5748 (WGB), 2003 WL 23205042, at * 16 (D.N.J. Dec. 24, 2003).

## V. CONCLUSION

For the reasons expressed above, (1) the Court will grant Defendants' motion for summary judgment as to Plaintiff's federal claims asserted in counts one and five of the Amended Complaint and (2) the Court declines to exercise supplemental jurisdiction over, and hereby dismisses, Plaintiff's state law claims asserted in counts two, three, and four of the Amended Complaint.

s/ Joel A. Pisano

JOEL A. PISANO, U.S.D.J.

DATED: September 22, 2005

---

[9] Because both Plaintiff and Defendants are residents of New Jersey, diversity jurisdiction is lacking. *See* 28 U.S.C. § 1332; Am. Compl. ¶¶ 3-5.